# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING EN BANC

### NO. 03-07-00037-CV

**Mark D. Bogar, M.D., Appellant**

**v.**

**Dolores G. Esparza, Individually and as Administrator of the Estate of Katherine G. Guerrero, Deceased; Fernando Guerrero; Sofia G. Butschy; Gilberto Guerrero; Antonio Guerrero; Rosie G. Garza; Benito Guerrero; Josey G. Selvera and Frances G. Faz, Appellees**

### FROM PROBATE COURT NO. 1 OF TRAVIS COUNTY, NO. 82,917-A, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

The expert reports required by section 74.351 of the civil practice and remedies code "are simply a preliminary method to show a plaintiff has a viable cause of action that is not frivolous or without expert support." *Kelly v. Rendon*, No. 14-07-00622-CV, 2008 Tex. App. LEXIS 2865, at *34 (Tex. App.—Houston [14th Dist.] Mar. 27, 2008, no pet. h.). One of the benefits behind the expert-report requirement is that the screening mechanism frees up judicial resources to address non-frivolous claims. *See* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 971, 74th Leg., R.S. (1995) (noting that predecessor statute to section 74.351 "would help focus judicial resources on legitimate claims"). The present case, which arose after a patient suffered a fatal overdose of

oxycodone and propoxyphene while receiving post-operative care for hip-replacement surgery, does not appear to be the type of meritless claim that the legislature intended to prevent by imposing the gate-keeping measure of the expert report.

I join Justice Patterson's dissent in holding that the trial court acted within its discretion in finding the expert report sufficient, but write separately to further address the majority's failure to remand this case for a determination of whether, in the discretion afforded to the trial court under section 74.351(c), the appellees should be given a 30-day extension of time in order to cure any deficiencies in the expert report.[1]

The majority reverses the trial court's determination that Dr. Adame's expert report is sufficient and renders judgment of dismissal, holding that this report constitutes "no report" as to Dr. Bogar and therefore that the trial court did not have discretion to allow a 30-day extension. *See id*. § 74.351(b) (stating that trial court shall dismiss claim if expert report has not been served within 120 days); *Ogletree v. Matthews*, No. 06-0502, 2007 Tex. LEXIS 1028, at *8 (Tex. Nov. 30, 2007) ("If no report is served within the 120 day deadline provided by 74.351(a), the Legislature denied trial courts the discretion to deny motions to dismiss or grant extensions."). If an expert report fails to implicate the conduct of a particular defendant, it is treated as "no report" as to that particular

---

[1] I do not take issue with the majority's holding that the appellees, who failed to take full advantage of the discovery tools provided by section 74.351 of the civil practices and remedies code, cannot now argue that the statute imposes an unconstitutional burden by restricting discovery until after expert reports have been served. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(s), (u) (West Supp. 2007). However, while the appellees may not have established that section 74.351's discovery limitations prevented them from serving a sufficient expert report, they have also not been given any opportunity to cure deficiencies in Dr. Adame's report, which, until this Court's holding on appeal, had been deemed sufficient as to Dr. Bogar.

defendant. *See Apodaca v. Russo*, 228 S.W.3d 252, 257 (Tex. App.—Austin 2007, no pet.) (report that described conduct of other doctors and health-care providers but failed to mention appellee at all constituted "no report" as to appellee); *Garcia v. Marichalar*, 185 S.W.3d 70, 72-73 (Tex. App.—San Antonio 2005, no pet.) (report that focused on conduct of other defendants and did not mention appellant at all was considered "no report" as to appellant). However, an expert report that does not fully satisfy the statutory criteria but is not so inadequate as to be deemed "no report" is treated as a deficient report, and trial courts have discretion to allow parties an extension of time in order to cure the deficiencies. *See Ogletree*, 2007 Tex. LEXIS 1028, at *10 ("[A] deficient report differs from an absent report. Thus, even when a report is deemed not served because it is deficient, the trial court retains discretion to grant a thirty-day extension.").

While Dr. Adame's report does not mention Dr. Bogar by name, it unambiguously implicates Dr. Bogar's conduct. Unlike the reports in *Apodaca*, *see* 228 S.W.3d at 257, or *Marichalar*, *see* 185 S.W.3d at 72-73, the report in the present case does not implicate, identify, or describe the conduct of any physicians or medical professionals other than Dr. Bogar. Furthermore, Dr. Adame's report describes "the standard of care required of *physicians* not to prescribe drugs either alone or in combination that will cause a fatal overdose." (Emphasis added). The report states that "[s]uch conduct falls below the standard of care required of physicians," and details how the levels of oxycodone and propoxyphene found in Guerrero's blood exceeded the amounts known to cause death. In light of this language, it is clear from the four corners of the report that Dr. Adame is implicating the conduct of the physician who prescribed oxycodone and propoxyphene to Guerrero. *See American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) ("[T]he only information relevant to the inquiry is within the four corners of the

3

document."). *See also Ogletree*, 2007 Tex. LEXIS 1028, at *2 (where expert report implicated appellant's conduct but did not mention appellant by name, report was merely deficient and subject to extension allowed under section 74.351(c), rather than "no report" as to appellant).

An expert report does not have to meet the same requirements as evidence offered in a summary-judgment proceeding or at trial, but is merely required to "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question." *Palacios*, 46 S.W.3d at 875, *see also* 879. The trial court, in its discretion, may have reasonably concluded that Dr. Bogar was sufficiently informed of the conduct that the plaintiff in this case was calling into question—prescribing a combination of drugs in amounts that resulted in a fatal overdose.

The majority's holding in the present case conflicts with this Court's holding in *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276 (Tex. App.—Austin 2007, no pet.), in which we held that an expert report's failure to specifically identify a physician as having breached the standard of care or having caused the patient's injury merely results in a deficient report, subject to the cure provisions of section 74.351(c), rather than "no report." *Id.* at 282-83. The report in *Austin Heart* not only discussed the conduct of the appellant without identifying the appellant as having breached the standard of care or caused the injury, but also discussed the conduct of various other physicians without making it clear that the report related to the appellant physician. *Id*. at 280. Despite these omissions, this Court stated:

> While we are of the view that Dr. Cororve's report is deficient under section 74.351 because it requires the reader to make an educated guess regarding an essential element, we are also aware that the defect might well be curable. The tenor of Dr. Cororve's report, coupled with the fact that there is only one physician defendant,

4

makes it quite likely that Dr. Cororve intended to opine that Dr. Kessler breached the standard of care and caused injury even though the report did not contain that opinion. *The report's failure on this point is the kind of defect that the cure provisions of section 74.351(c) were designed to address.*

*Id*. at 282-83 (emphasis added).

Significantly, the *Austin Heart* opinion also states, "Had Dr. Cororve referenced only actions by Dr. Kessler in the background section of his report, the link between Dr. Cororve's opinions and the responsible physician might be more apparent." *Id*. at 281. The link between Dr. Adame's opinions and Dr. Bogar could not be more apparent in the present case, where no other physicians or health-care professionals are named as defendants or mentioned in the expert report.

Furthermore, the Texas Supreme Court's mandate that only information within the four corners of the expert report may be reviewed for sufficiency, *see Palacios*, 46 S.W.3d at 878, does not necessarily preclude the trial court from conducting an independent analysis of the information contained in the report. In *IHS Acquisition No. 140, Inc. v. Travis*, No. 13-07-00481-CV, 2008 Tex. App. LEXIS 2950 (Tex. App.—Corpus Christi Apr. 24, 2008, no pet. h.), the appellant argued that the trial court made an improper inference about causation that extended outside of the four corners of the expert report. The report failed to address a one-month gap between treatment of the patient's eye abscess and her death, and the trial court commented that the gap was the time which "causes the abscess to grow in the system and proliferate." *Id*. at *24. The court of appeals held that the trial court did not abuse its discretion in making such a comment, noting that expert reports may contain some level of ambiguity "that is subject to the independent analysis of the trial court." *Id.* The court further stated:

5

[T]he trial court's explanation was only beyond the 'four corners' of the report in the sense that the trial court explained medical concepts—such as abscess and cardiogenic shock—which Dr. Starer did not explain. The trial court, however, did not propose unique causation theories that were not discussed in the expert report.

We believe that Dr. Starer's report, which explained causation, but which did not explain certain medical concepts that would perhaps need to be explained at trial, was 'less than all the evidence necessary to establish causation at trial,' but still provided a 'fair summary' of causation. . . . The trial court's comments were not an improper 'inference' and do not constitute an abuse of discretion.

*Id.* at \*25 (quoting *Tovar v. Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P.*, 185 S.W.3d 65, 68 (Tex. App.—San Antonio 2005, pet. denied)).

Similarly, the trial court's conclusion that the report implicated the conduct of Dr. Bogar—the only physician named as a defendant—where no other physicians or healthcare providers were implicated in the report can best be characterized as an analysis of the information included in the report, rather than an impermissible venture outside the four corners of the expert report.

Because the trial court found Dr. Adame's report to be sufficient, no 30-day extension was ever required, although the appellees requested an extension in the event that the report was found to be deficient. In light of the majority's ruling that Dr. Adame's expert report fails to meet the statutory requirements, "consideration by the trial court of [the appellees'] request for an extension to attempt to cure the defect is warranted." *See Austin Heart*, 228 S.W.3d at 283.

I agree with Justice Patterson's dissent that the trial court acted within its discretion in determining that Dr. Adame's report was sufficient. However, assuming that the report was not sufficient, I would hold in the alternative that Dr. Adame's report is merely deficient, rather than "no report" as to Dr. Bogar, and therefore that the proper remedy is a remand to allow the trial court to

6

determine whether to grant a 30-day extension of time under section 74.351(c), giving the appellees an opportunity to cure any deficiencies.[2] As a result, I respectfully join the dissent.

_____

Diane Henson, Justice

Filed: May 16, 2008

_____

[2] In addition to arguing that Dr. Adame's report constituted "no report," Dr. Bogar also argues that Dr. Adame, a pathologist, was not qualified to render opinions concerning the standard of care applicable to physical medicine rehabilitation physicians, such as Dr. Bogar. While the majority does not address this contention in light of their holding that the expert report constituted "no report" as to Dr. Bogar, I would hold that even if Dr. Adame is deemed unqualified to render an expert opinion in this case, the appellees should still be afforded the opportunity to request the 30-day extension provided by section 74.351(c).

A similar argument regarding expert qualifications was made in *Ogletree*, in which the appellant asserted that a radiologist was incapable of opining on the standard of care applicable to urologists. *Ogletree v. Matthews*, No. 06-0502, 2007 Tex. LEXIS 1028, at *4 (Tex. Nov. 30, 2007). In a concurring opinion, Justice Willett stated that the defect in the expert report consisted of "designating the wrong type of medical professionals to opine on standard of care," and that using the wrong type of expert "is the type of defect for which a trial court may grant a discretionary section 74.351(c) extension." *Id*. at *18 (Willett, J., concurring).

7