IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00155-CV

 

Ana Maria Gonzalez Salais, 

Individually and as 

Representative of the Estate of 

Ruben Gonzalez, Deceased,

                                                                                    Appellant

 v.

 

Texas Department of Aging & 

Disability Services,

                                                                                    Appellee

 

 



From the 77th District Court

Limestone County, Texas

Trial Court No. 28901A

 



dissenting Opinion










 

            Ana Maria Gonzalez Salais appeals the
trial court’s judgment dismissing her health care liability claim against the
Texas Department of Aging and Disability Services.  Because the trial court did
not abuse its discretion in granting TDADS’s motion to dismiss or in denying
Salais’s request for a 30-day extension, we should affirm the trial court’s
judgment.  Because the Court does not, I respectfully dissent.

 

Background

            Salais’s son, Ruben Gonzalez, was a
patient at a TDADS facility, the Mexia State School.  After an altercation with
the State School staff, Gonzalez was placed on a restraint board.  He then
died.  Salais sued both TDADS and the Mexia State School.  The trial court
granted TDADS’s motion to dismiss.  

            In two issues on appeal, Salais argues
that the trial court erred in granting TDADS’s motion to dismiss pursuant to
section 74.351 of the Texas Civil Practice and Remedies Code and erred in
denying Salais’s request for a 30-day extension pursuant to section 74.351(c)
of the Texas Civil Practice and Remedies Code.

Dismissal

            Section 74.351 of the Civil Practices
and Remedies Code provides that within 120 days of filing, a claimant must
serve a curriculum vitae and one or more expert reports regarding every
defendant against whom a health care claim is asserted.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a) (Vernon Supp. 2009).  “Section 74.351 has numerous subparts,
including: 

            . subpart (b) requiring trial courts
to dismiss a claim with prejudice and award fees if "an expert report has
not been served" by the statutory deadline; 

            . subpart (c) allowing a 30-day
extension of the deadline if a report is found inadequate; and

            . subpart (l) providing that a motion challenging
a report's adequacy should be granted only if the report does not represent a
good-faith effort to comply with the statute.”  Lewis v. Funderburk, 253
S.W.3d 204, 207 (Tex. 2008) (footnotes omitted); Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b), (c), (l) (Vernon Supp. 2009).

            When considering a motion to dismiss
under section 74.351, the issue for the trial court is whether the report
represents a good-faith effort to comply with the statutory definition of an
expert report.  See Bowie Mem'l Hosp. v. Wright, 79 S.W.3d
48, 52 (Tex. 2002); American Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 878 (Tex. 2001).  An "expert report"
means:

A written report by an expert that provides a fair
summary of the expert's opinions as of the date of the report regarding the
applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards and the causal
relationship between that failure and the injury, harm, or damages claimed.

 

Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(r)(6) (Vernon
Supp. 2009).  To constitute a "good-faith effort," the report must
discuss the standard of care, breach, and causation with sufficient specificity
to fulfill two purposes: (1) to inform the defendant of the specific conduct
the plaintiff has called into question; and (2) to provide a basis for the
trial court to conclude that the claims have merit.  Bowie, 79 S.W.3d at
52; Palacios, 46 S.W.3d at 879.  

            The report must include the expert's
opinion on each of the three elements that the statute identifies:  standard of
care, breach, and causal relationship.  Bowie, 79 S.W.3d at 52; Palacios,
46 S.W.3d at 878.  A report cannot merely state the expert's conclusions about
these elements.  Bowie, 79 S.W.3d at 52; Palacios, 46 S.W.3d at
879.  "Rather, the expert must explain the basis of his statements to link
his conclusions to the facts."  Earle v. Ratliff, 998 S.W.2d 882,
890 (Tex. 1999).  

            We review a trial court's order
dismissing a claim for failure to comply with the expert report requirements
under an abuse-of-discretion standard.  Bowie, 79 S.W.3d at 52; Palacios,
46 S.W.3d at 878.  Expert reports that omit at least one of the three
specifically enumerated requirements of an expert report cannot constitute a
good faith effort to meet the statutory requirements.  See Jernigan
v. Langley, 195 S.W.3d 91, 94 (Tex. 2006); Palacios, 46 S.W.3d at
879.  

            Salais provided two reports to serve
as her expert report.  One report was prepared by James Wohlers, a paramedic
from Nebraska, which Salais alleged addressed the expert report elements of the
standard of care and the breach of that standard.  The other report was
prepared by Donald Winston, a physician from Houston.  Salais alleged Dr.
Winston’s report addressed the causation element.  TDADS complains, and I
agree, that Dr. Winston’s report wholly fails to address the causation
element.  

            Assuming without deciding that Dr.
Winston is otherwise qualified to render an opinion on causation, he does not. 
Dr. Winston states in his report that he reviewed the autopsy report of Ruben
Gonzalez and the death certificate.  Then, he simply states that, although he
disagrees with the nine pathologists on whether Gonzalez was in part
responsible for his own death, he agrees with them in their conclusion that it
was homicide caused by restraint and mechanical asphyxiation “imposed on him by
the three Mexia State School employees.”  

            What Dr. Winston fails to do is draw
the connection or explain the causal link between the negligent actions of a
specific health care provider (the elements of standard of care and breach as
described by Wohlers, the other purported expert) and the damages/injury
(Gonzalez’s death).  In other words, his report on causation must make the
connection that the death by mechanical asphyxiation was caused by the conduct
described by Wohlers, assuming that was adequately presented in the other
expert report.  See Bowie, 79 S.W.3d at 53.  Because Dr. Winston
did not indicate he had reviewed the other purported expert’s report, this
required connection is simply missing.  Further, it is impermissible to infer
that the conduct referenced in one report is the basis for the conclusions in
the other report.  See Austin Heart, P.A. v. Webb, 228 S.W.3d
276, 279 (Tex. App.—Austin 2007, no pet.). 

            Dr. Winston’s report is similar to an
expert report discussed in Shaw v. B.M.W. Healthcare, Inc., 100 S.W.3d 8
(Tex. App.—Tyler 2002, pet. denied).  In Shaw, the Shaws filed two
expert reports to address the three elements, one from a physician and one from
a registered nurse.  The Shaws agreed that the physician’s report did not set
out the applicable standards of care or address how the defendants breached any
standards.  They argued, however, that those omissions were irrelevant because
the physician only rendered an opinion on the cause of death.  Citing to Palacios,
the Tyler Court of Appeals held that because there was no discussion in the
report as to the applicable standard of care and any breaches of that standard,
an opinion solely addressing the cause of death did not satisfy the statutory
requirements of an expert report.  Shaw, 100 S.W.3d at 13 (citing Palacios,
46 S.W.3d at 879).  Like the report in Shaw, Dr. Winston’s report only
addressed Gonzalez’s cause of death without a link between the alleged breach
and the injury.  Accordingly, I would hold that Dr. Winston’s report does not
meet the requirement of an expert report because there is nothing in the report
that addresses the causal connection between the breach by the Mexia State School employees of the standard of care as allegedly contained in Wohlers’s
report and the injury, the death of Gonzalez, claimed.  The causation element
has been omitted from the report.

            Because Salais’s expert reports omit
at least one of the three specifically enumerated requirements of subsection
(r)(6), they cannot constitute a good faith effort to meet those requirements. 
I need not decide TDADS’s objections to Wohlers’s report.  Accordingly, because
the trial court did not abuse its discretion in granting TDADS’s motion to
dismiss Salais’s suit against TDADS, Salais’s first issue should be overruled.

Continuance

            Salais further argues that should we
determine the reports were deficient, we should remand the matter back to the
trial court for a 30-day extension.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (Vernon Supp. 2009).  The parties agree and the trial court’s docket sheet indicates that a
request for a 30-day extension was denied.  Section 74.351(c) provides in part
that the trial court may grant one 30-day extension to the claimant to cure a
deficiency in an expert report.  Id.  The term "may" as used
in subsection (c) vests the trial court with discretion to grant a 30-day
extension.  Bosch v. Wilbarger Gen. Hosp., 223 S.W.3d 460, 465 (Tex. App.—Amarillo 2006, pet denied); Hardy v. Marsh, 170 S.W.3d 865, 870-71 (Tex.
App.—Texarkana 2005, no pet.). 

            I assume without deciding that once
the trial court determines that the report furnished did not constitute a good
faith effort to meet the requirements of an expert report, the trial court can,
nevertheless, grant a 30-day extension to cure the deficiency.  To grant such
an extension, the trial court would have to consider the totality of the
circumstances surrounding the preparation of the report, such as the
difficulty, if any, encountered by the plaintiff in obtaining the necessary
experts or in getting the medical records necessary for the expert to review,
the diligence of the plaintiff in securing an expert on the specific type of
healthcare liability claim, whether a 30-day extension would have allowed the
plaintiff to cure the defect, and the extent of the deficiency in the proffered
report.  This list of considerations is by no means exhaustive.  

            But in this case, we have not been
provided any record from which we could review the trial court’s
determination.  Because we have no record to review, Salais is unable to
support the complaint that the trial court abused its discretion in failing to
grant a 30-day extension.  See In the Interest of D.W., 249
S.W.3d 625, 648 (Tex. App.—Fort Worth 2008, no pet.) (because no record of
hearing on motion to extend dismissal deadline, court presumes evidence
supported trial court’s ruling and no abuse of discretion shown).

            Salais’s second issue should be
overruled.

Conclusion

            Having overruled each issue, I would
affirm the interlocutory order of dismissal of the trial court.  Because the
Court does not, I respectfully dissent.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Dissenting
opinion delivered and filed August 4, 2010






le='font-family:Palatino'>            Justice
Reyna, and

            Justice
Davis

Affirmed

Opinion
delivered and filed February 3, 2010

[CV06]









[1] This
procedure is not mentioned specifically in Hall’s petition.





[2] We
note that a portion of the report addresses the counseling and additional
testing necessary before performing surgery of this nature, particularly the
clitoral hoodectomy.  He opined that under the circumstances, the surgery
should not have been done due to inadequate patient counseling and testing.