IN THE
TENTH COURT OF APPEALS


No. 10-08-00271-CV

**ROYAL H. BENSON, III, M.D., INDIVIDUALLY
AND D/B/A SOUTHWEST CENTER FOR
FEMALE GENITAL REFINEMENT, AND
BENSON OB/GYN CENTER, PA,**

                                                    **Appellants**

 **v.**

**JO LYNN VERNON,**

                                                    **Appellee**

**From the 85th District Court
Brazos County, Texas
Trial Court No. 08-000533-CV-85**

## CONCURRING AND DISSENTING OPINION

This is a medical malpractice expert report interlocutory appeal. The Court makes a number of decisions in this proceeding and ultimately reverses and remands in part and affirms in part the decision of the trial court. For a number of reasons that I will try to explain below, I cannot join any part of the Court's opinion other than as expressly stated herein. My discussion consists primarily of practical concerns about the interaction and purpose of pleadings, the relevant statute, and the related motion

practice, and an analysis of the record.

# I

## What is a health care liability claim?

From the prayers in Benson's objections to the expert report and his motion to dismiss due to the inadequacy of the report, and his brief and arguments on appeal, it is evident that Benson views a health care liability claim very narrowly. By narrowly, I mean that he treats each possible component as a "claim" rather than as part of a claim.

*The Objections*

In Benson's 19 pages of objections to the adequacy of Vernon's expert's report, he asserts that the expert

> report is deficient as to the following *claims* in Plaintiff's Original Petition that are not even addressed in his [Vernon's expert's] report:
>
> a. Plaintiff's right breast implant was improperly placed;
>
> b. Plaintiff required a pulmonary specialist following her surgery;
>
> c. Plaintiff required a radiologist to review her chest x-ray film;
>
> d. Plaintiff required a referral to a cosmetic surgeon;
>
> e. Plaintiff's medical records were altered or fabricated;
>
> f. Dr. Benson's care will cause future pain and mental anguish;
>
> g. Dr. Benson's care will cause Plaintiff future medical expense;
>
> h. Dr. Benson's care caused physical incapacity, disability and disfigurement;
>
> i. Dr. Benson's care will cause future physical incapacity, disability and disfigurement; and

j. Dr. Benson's care caused Plaintiff to lose earnings in the past.

CR at 33. (Emphasis added).

*The Motion*

These same complaints were essentially converted to the grounds for Benson's 26-page "Motion to Dismiss Pursuant to Section 74.351(B)." CR at 73. The prayer to that motion reiterates, almost verbatim, the same complaints but asserts that rather than simply objectionable defects in the expert report, they are each *claims* that are omitted from the report, thus entitling Benson to have each of these claims dismissed and upon which he should recover his attorney fees. In Benson's motion to dismiss, he asserts the expert

report is deficient as to the following *claims* in Plaintiff's Original Petition that are not even addressed in his [Vernon's expert's] reports:

a. Dr. Benson was negligent by improperly placing the right breast implant;

b. Dr. Benson was negligent by not referring Plaintiff to a pulmonary specialist following her surgery;

c. Dr. Benson was negligent by sending Plaintiff to an urgent care clinic for a chest x-ray instead of referring her directly to a radiologist;

d. Dr. Benson was negligent by not identifying the cause of swelling or asymmetry of the right breast;

e. Dr. Benson was negligent by failing to assure proper placement of the right implant;

f. Dr. Benson was negligent by altering or fabricating Plaintiff's medical records;

g. Dr. Benson's care will cause future pain and mental anguish;

h. Dr. Benson's care will cause Plaintiff future medical expenses;

i. Dr. Benson's care caused physical incapacity, disability and disfigurement;

j. Dr. Benson's care will cause future physical incapacity, disability and disfigurement; and

k. Dr. Benson's care caused Plaintiff to lose earnings in the past.

CR at 96 (emphasis added).

*The Narrow View*

In my humble opinion, Benson's view of what constitutes a health care liability claim is entirely too narrow. In at least one aspect, the Court erroneously joins him in that narrow view.

Benson's objections and his motion attack what are actually either individual acts of a cause of action for medical malpractice or allegations of different types of damages resulting from such acts. Benson's motion is somewhat like a hybrid special exception and a no-evidence-motion-for-summary-judgment attacking the lack of *expert* evidence in the report of specific elements of a negligence claim. But the motion does not attack elements of a cause of action. Rather, it attacks the absence of reliable expert evidence in the expert report of conduct or types of damages, asserting that each is a separate health care liability *claim*. It thus appears that Benson attempts to strike from the case every allegation in Vernon's petition that does not find support in the expert's report or which is contrary to the view of the evidence, such as Vernon's hospital record, which

incidentally is a record created by Benson and which Vernon alleges was falsified or altered. This is not how a medical expert's report is properly challenged, nor does it fulfill the purpose the statute was designed to fulfill – to limit frivolous medical malpractice suits. The trial court recognized this problem. *See* RR at 23-26.

Thus, the first question that we should address is whether the motion to dismiss for the failure to file an expert report in support of a health care liability claim allows the defendant to break the pleading down into allegations of the individual acts and types of damages asserting that each act or type of damage is a separate *claim* and, therefore, requires a report for each; or whether there is some other grouping of the alleged acts and injuries that constitute a health care liability claim distinct from the otherwise minimal allegations necessary for otherwise adequately pleading a cause of action for medical malpractice.

The Court, I believe inadvertently, gets drawn into Benson's tortured analysis. The Court initially states that in Vernon's petition there are allegations of negligence resulting in two injuries: the pneumothorax and asymmetry of her right breast. Maj. Op., pg. 5. The Court then notes that Benson complains that Vernon's expert report[1] fails

> to address: (1) improper placement and failure to assure proper placement of the right breast implant; (2) failure to refer Vernon to a respiratory specialist; (3) failure to have Vernon obtain a chest x-ray from an urgent care clinic [sic]; (4) failure to identify the cause of swelling and asymmetry of the right breast; (5) alteration and fabrication of medical records; (6) future pain and mental anguish; (7) future medical expenses; (8) past and future physical incapacity, disability, and disfigurement; and

---

[1] The report is comprised of two documents from the same doctor, which comprise the one report.

(9) lost earnings.

Maj. Op., pgs. 5-6.

I note that these 9 items correspond to the 11 deficiencies identified in Benson's motion to dismiss but they track neither the 13 acts of negligence alleged in the petition, CR at 4-5, nor the 7 types of damages alleged in the petition, CR at 5-6, to have resulted from the 13 acts of negligence.

But after a general statement by the Court that Vernon's allegations of negligence resulted in the two identified injuries, without further analysis the Court then proceeds in a discussion which separates and regroups the allegations in the petition and summarizes the allegations as four *claims* that, if determined to be health care liability claims, must each be the subject of an expert report. Those four *claims,* in the order discussed in the Court's opinion, are: 1. Pneumothorax; 2. Asymmetry of the right breast; 3. Alteration and fabrication of medical records; and 4. Damages. I will address the damages discussion first because it, overall, has the least problems.

**Damages are not a health care liability claim – but then what are damages?**

In the course of its discussion, the Court appropriately holds that an allegation of particular damages is not a health care liability *claim* that requires an expert report, stating that in Vernon's expert report she "is not required to prove up Vernon's damages." Maj. Op., pg. 7. I find no error in this discussion.

Immediately preceding that discussion, however, the Court holds that asymmetry of the right breast is a health care liability *claim* that must be addressed in an expert report. The Court then concludes that, because the report fails "to inform Dr.

Benson of the specific conduct sued on with respect to asymmetry of the right breast[,]" that *claim* must be dismissed. *Id.* This implies that the allegations in the petition regarding the asymmetry of the right breast are, standing alone, allegations of a health care liability claim that must then be supported by an expert report as to that particular *claim*.

The problem presented is deeper than the Court has analyzed. Is the asymmetry of the right breast an allegation of an element of negligence, an element of a claim, or is it simply an allegation of a particular type of injury, *i.e.*, a type of damage, resulting from other allegations of negligence? Actually, it may be any or none, depending on its context.

At least part of the problem with putting this allegation in the proper context is the legislative effort to have the expert report serve the function of what the petition should do—namely, inform the health care providers of the reason why they have been sued.

In the petition, Vernon alleges as an act of negligence that Benson failed "to assure proper placement of the right implant at the time of surgery." CR at 5. But when closely examined, this allegation is very different from what Benson and the Court generically refer to as the claim for "asymmetry of the right breast." Asymmetry of the right breast, as referred to by Benson and the Court, cannot be a complete allegation of a cause of action for negligence. Negligence consists of four elements: duty, breach, proximate cause, consisting of two sub-elements – cause in fact and foreseeability, and damages, *i.e.*, an injury. *See Western Invs., Inc. v. Urena*, 162 S.W.3d

547, 551 (Tex. 2005). Injury is comprised of many categories or types of damages.

Likewise, "asymmetry of the right breast" cannot be a complete allegation of a health care liability claim. On its face, it is, at least, a reference to the breach of a duty as a description of the result of a negligent act. And, at the very least, it is an adequate reference to the injury as a damage in the category of disfigurement. But other damages will naturally and normally flow from this conduct and injury, including future surgical cost to fix the asymmetry and the related pain and suffering from that future surgery. In this regard, the alleged act of negligence is Benson conducting the surgery when he failed to possess the requisite skill to properly perform a breast augmentation, in essence, inadequate skill to assure proper placement of the breast, which is separately alleged in the petition, CR at 4-5, and the expert report, CR at 59, 66-67, but is not addressed in the Court's opinion. I presume asymmetry could also relate to the allegations in the petition and report that the surgery was performed at an inappropriate or inadequate medical facility.

**Summary**

Thus, I believe Benson and the Court have erroneously focused on an element of a health care liability claim, in fact, only one aspect of the injury element, the damages flowing from the claim, and the Court has inexplicably required an expert report on this specific allegation of a specific type of damages. But otherwise, the Court has properly held that damages need not be proven up by the expert in the expert report. I believe the Court's error is the result of first the parties', then the trial court's, and now this Court's failure to properly identify what is meant by the legislature's reference to a

health care liability claim.  The result is that, in regard to this case, Vernon will be unable to recover some damages that allegedly occurred as the result of allegations of negligence which Benson did not directly attack in his motion to dismiss.  I believe this results in an erroneous judgment of this Court, and therefore, I must dissent to this holding.

## II

### Many *claims* under a "good" report on one claim, or many claims require many reports?

In this proceeding, another holding of some importance is deciding the issue:  to the extent there are multiple health care liability claims asserted in the petition, does each health care liability claim asserted in the petition have to be supported by an expert report?  I believe that this is the first time this issue has been so squarely addressed.  The statute does not expressly require it.  Rather, a simple reading of the statute indicates that if a health care liability claim is asserted by the plaintiff, the plaintiff must then file an expert report as to each physician or health care provider against whom *a claim* is asserted.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001(a)(13); 74.351(a) (Vernon 2005 & Supp. 2008).  It really is not clear from the statute that the pleading is broken up into each of the various claims and that each and every claim that is a health care liability claim must then be supported by an expert report.  And of course, failure to file the required report will result in dismissal of the health care liability claim if it is properly challenged.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp. 2008).  Thus, if the Court finds that one health care liability

claim is not supported by a timely filed expert report, that specific individual unsupported claim is essentially taken out of the suit by being dismissed. I believe this is the only logical reading of the statute.

If every health care liability claim included in a single petition did not have to be separately supported by a timely filed expert report, one nominal, but technically valid, claim could hold in court for trial any number of totally bogus, completely frivolous claims. I do not believe that could possibly be what the legislature intended. Accordingly, I concur in the judgment to the extent that it implies that for each separately identifiable and alleged health care liability claim the plaintiff must file an expert report.

I recognize that one document can be the required expert report for several different claims if they are separately and independently supported in the report. Thus, one document can support many health care liability claims; but every health care liability claim must be the subject of a timely filed expert report.

*Four corners rule? — Not really*

Part of the confusion with regard to the need for and the adequacy of a separate expert report comes from the reference to the so-called "four-corners-rule." The Court indicates that we do not look beyond the four corners of the expert report to see if it is adequate. If this were actually a proper characterization of what we do, a single report on a single claim would necessarily support all the claims in the petition even if the expert report did not address a particular claim. In fact, a perfectly adequate expert report on a health care liability claim not even alleged would be adequate for the four

corners rule to hold the health care provider in court.

To avoid this erroneous construct, we actually first look to the petition to see what health care liability claims are alleged and then look to the expert report to see if the report, which may even be in more than one document, is an adequate expert report with regard to each claim alleged in the petition. Thus, at the very least, we use an eight corners rule. We look at two documents; first to the petition for identification of each health care liability claim and then to the expert report to see if the report is adequate to comply with the requirements of an expert report regarding each health care liability claim alleged in the petition.

*Four more corners?*

But we really cannot stop with an examination of the petition and the expert report. We must also look at the motion to dismiss.[2] If the motion to dismiss does not move to dismiss one of the individual/multiple health care liability claims raised in the petition, it does not matter that there is no expert report in support of that claim. If a health care liability claim is not attacked by a motion to dismiss because no expert report is filed as to a particular claim, it is irrelevant that no expert report was filed with regard to that claim. Thus, to successfully have a particular health care liability claim dismissed, the specific *claim* which is omitted must be identified in the motion to dismiss.

Therefore, we are actually looking to at least three different documents, twelve

---

[2]  We also cannot overlook the objections asserting deficiencies in the expert report. It is entirely possible, as in this case, that the detailed nature of the objections reveals the report may be deficient but does not totally omit any claim.

corners, to see if a health care liability claim must be dismissed because it is not properly supported by an expert report:  1) the petition; 2) the motion to dismiss; and 3) the expert report.  Thus, I believe the references to the four corners rule and purported limitation of our review to the expert report have unwittingly caused confusion in how to conduct the complete analysis of an expert report for a health care liability claim.

### III

### Medical Records

Another holding of the Court is that allegations of alteration or falsification of the medical records of a patient is not a health care liability claim.

With this holding I cannot agree.

There must be a standard in the medical industry for the extent and nature of what gets entered by the physician or health care provider in the medical records of a patient.  All treatment of a patient in the future is based upon the patient's medical history, including the record of treatment, as recorded in the patient's medical records.  If another physician, such as a specialist, must be consulted for some reason, or if a physician is relieved of his duties to a patient and another assumes treatment, the other physician or health care provider must be able to rely on the entries in the patient's medical records as being complete and accurate.  I would be very surprised if there were no accepted standards for the entries to be made in the medical records of a patient.  Thus, alteration or falsification of medical records would be a health care liability claim as an "other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to

health care…"  TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a) (13) (Vernon 2005).  Thus, it initially appears that because the expert report in this proceeding does not address the applicable standard related to the preparation of medical records, the breach of that standard, and the general connection to the injury caused as a result of the breach, I would be compelled to dismiss this claim of Vernon's.

If, however, we turn back to the motion to dismiss, Benson did not mention this claim in the motion, except in the final summary paragraph, the prayer, of the motion to dismiss (paragraph 63.f).  CR at 96.  Given the need to know with some degree of certainty both what the claims brought by the plaintiff are, as well as what claims the medical health care provider seeks to have dismissed, and that in this case Benson attacks the expert report as being conclusory and providing inadequate notice, I cannot hold that the trial court abused its discretion if it determined that the motion to dismiss was not sufficiently specific to seek dismissal of this claim.  In this conclusion, I am mindful that the related allegation which was only listed like other elements in the motion to dismiss but labeled as a claim, alone, is not actually a complete health care liability claim.

**IV**

**Entitled to an Extension?**

The question thus becomes, if the health care provider moved for dismissal of a specific claim pled in the petition because part of the claim was not directly addressed in the expert report that was timely received, does the plaintiff nevertheless get the opportunity to cure the deficiency?  If we look at the document as an expert report for

each separate claim, then necessarily, if a document does not address any element of a particular claim, no expert report has been filed in support of the claim and, therefore, the claim not addressed in the expert report must be dismissed. The report as to that particular claim is not merely deficient. The expert report as to that particular claim does not exist. Thus, it is no report at all. *See Lewis v. Funderburk*, 253 S.W.3d 204, 211 (Tex. 2008) (Willett, J., concurring); *Ogletree v. Matthews*, 262 S.W.3d 316, 323 (Tex. 2007) (Willett, J., concurring).

In this proceeding, the Court has determined that Vernon does not get the opportunity to cure what I believe are only deficiencies, not omission of claims, in the expert report. The Court holds that there was no report at all as to the claim for asymmetry of the right breast and that the claim that the medical records were altered or falsified was not even a medical health care liability claim. As stated above, I believe the Court errs in both of these determinations.

### *Mulligan due to inadequate ability to map the claims?*

In this proceeding, the trial court was clearly concerned about the plaintiff being stripped of her medical malpractice claims by a procedure being used like a hybrid special appearance and no-evidence-motion-for-summary-judgment. RR at 23-26. I agree with the trial court.

Based upon my review of the record, I would give the litigants the judicial equivalent of a mulligan—a do over. The petition does a relatively poor job of organizing the facts or allegations as complete health care liability claims. Thus, it is not surprising that the expert report was somewhat generic and general. The petition and

expert report were, however, specific enough for Benson to make 19 pages of detailed objections about the alleged deficiencies in the report. And the motion to dismiss should fail because rather than attacking whole claims, it attacked sub-elements of the various elements of a health care liability claim. Thus, the motion attempted to slice and dice the claim into the minute sub-parts and resulted in overcompensating for the general nature of the pleadings and expert report.

There was a general lack of proper focus in all 12 corners under review on what health care liability claims were being asserted and properly attacked for dismissal. Thus, I would affirm the trial court's order to the extent it overruled the motion to dismiss but reverse the trial court's order to the extent it overruled the objections to the adequacy of the expert report. I would remand this proceeding to the trial court and restart the timetable for filing the expert report/objections/motion-to-dismiss. This would allow the parties the opportunity to clean up the petition with a pleading and an expert report in which each separately identifiable health care liability claim, which should include the identification of the applicable duty (the standard of care), the breach of the duty, and generally the causal connection between that breach and the injury that resulted from the breach, could be specifically identified or labeled by the plaintiff, Vernon, and then supported in an expert report. The defendant, Benson, could then file objections to the deficiencies in the report or a motion to dismiss focused on an analysis of the claims omitted from the expert report supporting each health care liability claim asserted by the plaintiff.

Based on the information currently available to me in this record, I could not

hold that the trial court abused its discretion by refusing to dismiss any claim. And I would be compelled to hold that the expert report, while somewhat loose, touches on some of the aspects of an expert report of each health care liability claim asserted, but is otherwise inadequate to adequately apprise the doctor of the alleged standards that were breached and how that breach proximately caused an injury. In this regard, I again note that the pleadings and the expert report were sufficiently specific for Benson to be able to frame objections regarding the deficiencies in the expert report. Vernon should, therefore, be granted an extension of 30 days from the date the mandate in this appeal is issued to amend the expert report.

In the alternative, given that in this proceeding it is almost impossible under the current state of the pleadings to map the elements for each claim, find the support for each claim in the expert report, or find a clear challenge to a claim in the motion to dismiss, as opposed to the attack on the sub-elements of the claim, I would, in the interest of justice, require that the parties start the process over.

Because the Court fails to so hold, I respectfully dissent except as otherwise noted herein.


TOM GRAY
Chief Justice

Concurring and Dissenting opinion delivered and filed August 12, 2009
Publish