IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00155-CV

 

Ana Maria Gonzalez Salais, Individually

and as Representative of the Estate

of Ruben Gonzalez, Deceased,

                                                                                    Appellants

 v.

 

Texas Department of Aging 

& Disability Services,

                                                                                    Appellee

 

 

 



From the 77th District
Court

Limestone County, Texas

Trial Court No. 28901A

 



O p i n i o n



 

Ana Maria Gonzalez Salais appeals the
trial court’s order dismissing her health-care liability claim against the
Texas Department of Aging and Disability Services (TDADS).

Salais’s live petition alleges that her
son Ruben Gonzalez was a patient at the Mexia State School, a TDADS facility,
because of his developmental disability.  Late one evening (after midnight), Ruben
had refused to go to bed and was then physically restrained by Sheri Thornton
and Charles Korn, two TDADS employees.  After Joel Thomas, a third employee,
arrived, they placed Ruben on a restraint board.  Sue Sanderson, a TDADS nurse,
was called to the scene and found Ruben pale with no pulse or blood pressure.  Sanderson
was unable to resuscitate Ruben.  An automated external defibrillator (AED) was
employed, but it was not used to shock Ruben.  Paramedics arrived and their
monitor showed a flat line and no cardiac rhythm.  Ruben was taken to a
hospital, where he was pronounced dead.

Salais also pleads:

In the Prevention & Management of
Aggressive Behavior Course Synopsis allegedly provided by Defendant Mexia
[State School] to its employees, employees are warned that “[e]xtreme care must
be exercised during any horizontal restraint to insure that the person’s
ability to breathe is not restricted. . . .  [D]uring all horizontal
restraints, the person must remain in a side-lying position and monitored
continuously.  Failure to do so may risk serious injury and death from
positional asphyxia, [which] occurs when there is insufficient intake of oxygen
as a result of body positioning that interferes with one’s ability to
breathe.”  [Ellipsis and brackets in original].

 

            She further pleads that the
“Mexia State School Annual Retraining Course Synopsis,” allegedly provided to
every participant, gives the same warning and also provides “that the person
who is restraining the lower body has an important role in monitoring
breathing, circulation, and general condition of the restrained individual, and
in assisting in maintaining the restrained individual in a side-lying
position.”

            In her health-care liability
cause of action, Salais alleges that TDADS [Mexia State School] and TDADS
employees Korn, Thornton, and Thomas were negligent in the care and treatment
of Ruben in each of the following ways:

1.     
Failure to recognize
and/or appreciate the risk factors for the potential occurrence of death when
performing a physical restraint;

 

2.     
Misuse of the
restraints and restraint board when performing a physical restraint;

 

3.     
Failure to
anticipate the risk of traumatic asphyxia when performing a physical restraint;

 

4.     
Failure to plan the
physical restraint according to the increased risk for serious injury to Decedent;

 

5.     
Inappropriate
management of the complication of performing a physical restraint;

 

6.     
Failure to have the
requisite knowledge regarding appropriate responses to a combative physical
restraint;

 

7.     
Failure to perform
the appropriate interventions during the physical restraint of Decedent once
health complications were encountered;

 

8.     
Failure to provide
proper education and training to employees who were called upon to assist in
the restraint of Decedent.

 

Section 74.351 of the Civil Practices
and Remedies Code provides that within 120 days of filing suit, a claimant must
serve a curriculum vitae (CV) and one or more expert reports regarding every
defendant against whom a health care claim is asserted.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351 (Vernon Supp. 2009).  Salais provided two expert reports.  One report
was by James Wohlers, a paramedic, which addresses the standard of care and
breach elements relating to the use of the restraint board and the AED.  The
other report, of Donald Winston, M.D., addresses the causation element.

TDADS objected to the reports and moved
to dismiss Salais’s health-care liability claim under section 74.351.  See
id.  The motion asserted that Salais’s experts were not qualified and that
their reports were inadequate.  The trial court granted TDADS’s motion to
dismiss without stating any grounds.  In her first issue, Salais argues that
the trial court erred in granting TDADS’s motion to dismiss.

We review the trial court’s decision to
dismiss a health-care liability claim by the abuse-of-discretion standard.  American
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877
(Tex. 2001).  Also, a trial court’s decision on whether a person is qualified
to offer an expert opinion in a health-care liability claim is reviewed under
the abuse-of-discretion standard.  Moore v. Gatica, 269 S.W.3d 134, 139
(Tex. App.—Fort Worth 2008, pet. denied).  “However, a trial court has no
discretion in determining what the law is or applying the law to the facts.  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).  A clear failure by the
trial court to analyze or apply the law correctly will constitute an abuse of
discretion.  Id.”  Austin Heart, P.A. v. Webb, 228 S.W.3d 276,
279-80 (Tex. App.—Austin 2007, no pet.); see also Methodist Hosp. v.
Shepherd-Sherman, 296 S.W.3d 193, 197 (Tex. App.—Houston [14th Dist.] 2009,
no pet.) (“Though we may not substitute our judgment for that of the trial
court, the trial court has no discretion in determining what the law is or
applying the law to the facts.”).

Wohlers Report

 Qualifications

TDADS’s motion to dismiss and brief
assert that Wohlers’s report and CV do not establish his qualifications to
testify about the standards of care applicable to the Mexia State School
healthcare staff or to the treatment for individuals with behavioral, mental,
and developmental disabilities.  Its brief also asserts that Wohlers’s report
does not show that the “management and care” of Ruben on the occasion in
question is “something universally done.”

Regarding his qualifications, Wohlers’s
report states:

I received my paramedic education from
Creighton University in 1992.  Initially I was a paramedic in Omaha, Nebraska
from 1992 to 1996, then a paramedic for the City and County of Denver from 1996
until 2000.  Since 2000, I have been with the Grand Island Fire Department in
Grand Island, Nebraska as a paramedic/firefighter.  I have also been involved
in restraint asphyxia education since 2006.  I teach to EMS, Law Enforcement
and persons involved in the restraining of combative persons.  I have been
qualified as an expert in the field of restraint asphyxia.

 

Wohlers’s CV restates the above history and
notes his certification as an EMS instructor and that he specializes in
“restraint-related issues” and instructs on Advanced Life Support and Basic
Life Support topics.  His report further states:

I am familiar with the standard of care
for restraining a combative person and understand what steps should be taken to
monitor for respiratory distress.  Through my education, background and
experience, I am knowledgeable in the standard of care that the staff of Mexia
State School should have provided to Mr. Gonzales on the night he died.

 

On the issue of Wohlers’s
qualifications, we turn to the applicable statute, section 74.402, which
provides in pertinent part:

(b) In a suit involving a health care
liability claim against a health care provider, a person may qualify as an
expert witness on the issue of whether the health care provider departed from
accepted standards of care only if the person:

 

(1) is practicing health care in a field
of practice that involves the same type of care or treatment as that delivered
by the defendant health care provider, if the defendant health care provider is
an individual, at the time the testimony is given or was practicing that type
of health care at the time the claim arose;

 

(2) has knowledge of accepted standards
of care for health care providers for the diagnosis, care, or treatment of the
illness, injury, or condition involved in the claim; and

 

(3) is qualified on the basis of
training or experience to offer an expert opinion regarding those accepted
standards of health care.

 

(c) In determining whether a witness is
qualified on the basis of training or experience, the court shall consider
whether, at the time the claim arose or at the time the testimony is given, the
witness:

 

(1) is certified by a licensing agency
of one or more states of the United States or a national professional
certifying agency, or has other substantial training or experience, in the area
of health care relevant to the claim; and

            

(2) is actively practicing health care
in rendering health care services relevant to the claim.

 

Tex. Civ. Prac.
& Rem. Code Ann. §
74.402(b, c) (Vernon 2005).

We disagree that Wohlers was required to
be qualified in general as an expert about the standards of care applicable to
the Mexia State School healthcare staff for the care and treatment for
individuals with behavioral, mental, and developmental disabilities.  Rather,
under the literal language of subsections 74.402(b)(1, 2), Wohlers is only
required to be practicing health care in a field of practice that involves the
same type of care or treatment as that delivered by the defendant health
care provider and have knowledge of the accepted standards of care for health
care providers for the care or treatment of the condition involved in the
claim.  See id. § 74.402(b)(1, 2); see, e.g., Group v.
Vicento, 164 S.W.3d 724, 730-31 (Tex. App.—Houston [14th Dist.] 2005, pet.
denied).  Based on Salais’s allegations and the information in Wohlers’s
report, the type of care or treatment and the condition involved is the use of
physical restraint and a restraint board on a combative person.  Wohlers’s
report and CV show that he is a certified practitioner and instructor in health
care services relevant to the health-care liability claim in this case; he has
been a paramedic since 1992 and has been instructing on restraint asphyxia
since 2006, including teaching persons involved in the restraining of combative
persons.  His report states that he is familiar with the standard of care for
restraining a combative person and is knowledgeable of the standard of care
that the staff of Mexia State School should have provided to Ruben on the night
he died with respect to the use of physical restraint and a restraint board.

Under the applicable criteria in section
74.402(b), Wohlers’s report and CV demonstrate that he is qualified to offer an
expert opinion on the accepted standards of care for this type of care or
treatment by TDADS healthcare staff of combative persons.  To the extent the
trial court concluded otherwise, the trial court abused its discretion.

Adequacy

TDADS’s motion to dismiss asserted that
Wohlers’s report is inadequate because it does not articulate the relevant
standard of care and/or the bases for the relevant standards of care applicable
to TDADS and it does not specifically state the manner in which TDADS breached
the applicable standard of care.

When considering a motion to dismiss
under subsection 74.351(b), the issue is whether the report represents a
good-faith effort to comply with the statutory definition of an expert report. 
See Bowie Mem. Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002);
Palacios, 46 S.W.3d at 878.  An “expert report” is “a written report by an
expert that provides a fair summary of the expert’s opinions as of the date of
the report regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards,
and the causal relationship between that failure and the injury, harm, or
damages claimed.”  Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(r)(6).

In determining whether the report
represents a good-faith effort, the inquiry is limited to the four corners of
the report.  Palacios, 46 S.W.3d at 878.  The report need only represent
a good-faith effort to provide a fair summary of the expert’s opinions.  Id. 
The report does not have to marshal all of the plaintiff’s proof and the
plaintiff need not present evidence in the report as if it were actually
litigating the merits.  Id. at 879.  Rather, to constitute a
good-faith effort, the report must address the standard of care, breach, and
causation with sufficient specificity to inform the defendant of the conduct
the plaintiff calls into question and to provide a basis for the trial court to
conclude that the claims have merit.  Id. at 875.

The Wohlers report notes that he has
been qualified as an expert in restraint asphyxia.  It cites an investigative
report that he reviewed and details the course of events and the conduct of
three employees (Thomas, Korn, and Thornton) in placing Ruben on a restraint
board and, according to Thomas, using a restraint strap across his diaphragm,
after which Ruben “was breathing hard, in gasps, and making gurgling sounds.” 
According to Korn, a restraint strap was across Ruben’s chest, and Korn
observed only a “slight rise” in his chest; Ruben had a weak pulse.  Thornton
observed Ruben on the restraint board and thought he was asleep, but he looked
“funny” and was breathing shallow.  Nurse Sanderson arrived, and after finding Ruben’s
color to be abnormally pale, no blood pressure, and no pulse, she initiated CPR
and attempted to use an AED.  Mexia Fire/EMS then arrived, took over CPR, and
did an endotracheal intubation before transferring Ruben to Parkview Regional
Hospital, where he was pronounced dead.  Wohlers states:

I am familiar with the standard of care
for restraining a combative person and understand what steps should be taken to
monitor for respiratory distress.  Through my education, background and
experience, I am knowledgeable in the standard of care that the staff of Mexia
State School should have provided to Mr. Gonzalez on the night he died.

 

The standard of care requires that if
any one of the persons involved in the restraining of Mr. Gonzalez had
recognized that he was in respiratory distress, he should not have been placed
on a restraint board and had straps placed across his chest.  Had anyone of the
restrainers prevented the application of the restraint board, it is more likely
than not that Mr. Gonzalez would not have suffered restraint asphyxia.  No one
intervened in the application of the restraint board.

 

            Wohlers’s report sets forth
his familiarity with the standard of care and the basis therefor, what the
standard of care is, and how the TDADS staff breached it on the occasion in
question.  The report addresses the standard of care and breach with sufficient
specificity to inform TDADS of the conduct that Salais calls into question and provides
a basis for the trial court to conclude that the claims have merit.  See
Palacios, 46 S.W.3d at 875.  It informs TDADS “what care was expected
but not given.”  Fagadau v. Wenkstern, 311 S.W.3d 132, 138 (Tex.
App.—Dallas 2010, no pet. h.) (citing Palacios, 46 S.W.3d at 880).  To
the extent the trial court concluded otherwise, the trial court abused its
discretion.

Dr. Winston Report

Section 74.351(i) permits a claimant to
satisfy any requirement of section 74.351 for serving an expert report by
serving reports of separate experts.  Tex.
Civ. Prac. & Rem. Code Ann.
§ 74.351(i); see Packard v. Guerra, 252 S.W.3d 511, 527 (Tex.
App.—Houston [14th Dist.] 2008, pet. denied).  Expert reports can be considered
together in determining whether the plaintiff in a health care liability action
has provided adequate expert opinion regarding the standard of care, breach,
and causation.  See Walgreen Co. v. Hieger, 243 S.W.3d 183, 186 n.2
(Tex. App.—Houston [14th Dist.] 2007, pet. denied); Martin v. Abilene
Regional Med. Center, No.
11-04-00303-CV, 2006 WL 241509, at *4-5 (Tex. App.—Eastland Feb. 2, 2006, no
pet.) (mem. op.).  A physician’s report on causation should not be read in
isolation.  See Martin, 2006 WL 241509, at *4; see also Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C) (providing that
only a physician can be an expert giving opinion testimony on causal
relationship).

Qualifications

TDADS’s motion to dismiss and brief
assert that Dr. Winston’s report and CV do not establish his qualifications to
testify about causation.  Its brief first asserts that there is no showing that
Dr. Winston is a licensed physician.  "Expert" means, “with respect
to a person giving opinion testimony about the causal relationship between the
injury, harm, or damages claimed and the alleged departure from the applicable
standard of care in any health care liability claim, a physician who is
otherwise qualified to render opinions on such causal relationship under the
Texas Rules of Evidence.”  Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(r)(5)(C) (Vernon Supp. 2009); see
also Tex. Civ. Prac. & Rem. Code
Ann. § 74.403(a) (Vernon 2005).

Dr. Winston’s report is in a letter
format, and his letterhead and typed signature block identify him as “Donald
Winston, MD.”  His letterhead also reveals his website (www.urbansurgeon.com)
and his email address at that website.  Furthermore, his December 2008 CV
reflects that he is a licensed Texas physician (No. F0832, licensed in February
1978 and expiring May 31, 2010).  TDADS’s assertion that there is no showing
that Dr. Winston is a licensed physician is incorrect.

Dr. Winston’s report is a letter to
Salais’s attorney and states in its entirety:

At your request, I have reviewed an
autopsy report and death certificate of Ruben Gonzales, a 15 year old Hispanic
male who apparently was a student at the Mexia State School.

 

I have no way of knowing exactly what took
place on or about January 15, 2007, but I have reviewed a Third Amended
Petition in Cause 28901A which states that three employees of Mexia State
School physically restrained Mr. Gonzales.  After a period of time, a nurse at
the hospital found Mr. Gonzales dead.  Resuscitation failed, and after
endotrachial [sic] intubation by Mexia Fire Department EMS, he was taken to
Parkview Regional Hospital where he was pronounced dead.

 

My focus is on the Autopsy report in
Case No. JP0187-07-0120ACG done January 16th 2007.

 

I agree with the physical findings of:

1.     
Petechiae in the
right and left conjunctivae

2.     
Contusions to the
right arm and left leg

3.     
Subcutaneous
hemorrhage on the upper back and lower back

4.     
Two subgaleal
hemorrhages

5.     
Abrasions and
contusions on face and arms

6.     
Mechanical asphyxia

 

I disagree with the final opinion of the
nine pathologists to the extent that there is evidence that Mr. Gonzales in any
way contributed to his own death, but I agree that his death was a homicide
caused by restraint and mechanical asphyxia imposed on him by the three Mexia
State School employees.

 

If you have any other questions, please
feel free to contact me.[1]

 

TDADS is correct that Dr. Winston’s report
fails to show how he is qualified to render an expert opinion on causation in
this case.  Rule 702 of the Texas Rules of Evidence requires that an expert be
qualified by “knowledge, skill, experience, training, or education.”  Tex. R. Evid. 702.  The qualifications
of an expert must appear in the report itself and cannot be inferred.  See Benson
v. Hall, No. 10-09-00284-CV, 2010 WL 376957, at *1 (Tex. App.—Waco Feb. 3,
2010, no pet. h.); Estorque v. Schafer, 302 S.W.3d 19, 26 (Tex. App.—Fort
Worth 2009, no pet.); Philipp v. McCreedy, 298 S.W.3d 682, 686 (Tex.
App.—San Antonio 2009, no pet.); Baylor College of Medicine v. Pokluda, 283
S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.); Hansen v.
Starr, 123 S.W.3d 13, 19 (Tex. App.—Dallas 2003, pet. denied).  Dr.
Winston’s report does not set forth his qualifications at all.  His CV reflects
that he is currently practicing in the field of emergency medicine in Houston
and has held several positions as an emergency medicine physician and a general
and trauma surgeon.  Aside from their not being in the report itself, these
position descriptions alone are inadequate to show how Dr. Winston is qualified
to opine on the causal relationship of Ruben’s death.  Merely being a physician
is insufficient to qualify as a medical expert.  See Broders v. Heise,
924 S.W.2d 148, 152 (Tex. 1996); Hagedorn v. Tisdale, 73 S.W.3d 341, 350
(Tex. App.—Amarillo 2002, no pet.).

Because there is no showing in Dr.
Winston’s report that he is qualified to give an expert opinion on causation,
to the extent the trial court granted the motion to dismiss on this basis, it
did not abuse its discretion.  We overrule Salais’s first issue.

Adequacy

Because of our disposition of the second
issue, we must address TDADS’s challenge to the adequacy of Dr. Winston’s
report in its motion to dismiss.  On the adequacy of Dr. Winston’s report, we are precluded “from filling gaps in a report by drawing
inferences or guessing as to what the expert likely meant or intended.”  Austin
Heart, 228 S.W.3d at 279.  But here, there is no gap, and there is no guessing,
that Dr. Winston’s opinion on the cause of Ruben’s death—“restraint and
mechanical asphyxia imposed on him by the three Mexia State School employees”—is
the same conduct referred to in the Wohlers report as being the three Mexia
State School employees’ breach of the standard of care in restraining a person
in respiratory distress.

When the reports are read together, as
they must be in this case, they satisfy the causal-relationship requirement
because they constitute a good-faith effort to provide a fair summary of the
causal relationship between the employees’ conduct and Ruben’s death by
restraint asphyxia.  See Martin, 2006 WL 241509, at *5.  Read
together, they provide “enough information linking the defendant’s breach of
the standard of care to the plaintiff’s injury.”  Baker v. Gomez, 276
S.W.3d 1, 8 (Tex. App.—El Paso 2008, pet. denied).  And because Dr. Winston’s
report does link the employees’ conduct with Gonzalez’s death, TDADS’s reliance
on Bogar v. Esparza and Shaw v. BMW Healthcare, Inc. is misplaced,
as those cases are distinguishable on that basis.  Cf. Bogar v.
Esparza, 257 S.W.3d 354, 364 (Tex. App.—Austin 2008, no pet.) (“In essence,
Dr. Adame’s report is a second autopsy report, opining about the cause of Ms.
Guerrero’s death without explaining who caused it or how.”) (emphasis
added); Shaw v. BMW Healthcare, Inc., 100 S.W.3d 8, 12-13 (Tex.
App.—Tyler 2002, pet. denied) (op. on reh’g) (“An opinion solely addressing the
cause of death does not satisfy the statutory requirements.”).

Extension

            Subsection 74.351(c)
provides:  “If an expert report has not been served within the period specified
by Subsection (a) because elements of the report are found deficient, the court
may grant one 30-day extension to the claimant in order to cure the
deficiency.”  Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(c).  In
her second issue, Salais asserts that the trial court abused its discretion in not
granting her alternative motion for a thirty-day extension to cure her expert
report’s deficiency.

            The docket sheet appears to
reflect the trial court’s denial of that motion, but docket-sheet entries are
not “of-record” rulings.  Any order or judgment, to be effective, must be
entered of record.  Kocman v. Kocman, 581 S.W.2d 516, 518 (Tex. Civ.
App.—Waco 1979, no writ); see also Willis v. Nucor Corp., 282 S.W.3d
536, 543 (Tex. App.—Waco 2008, no pet.).

            Dr. Winston’s report is technically
deficient—as opposed to being “no report”—because the report lacks his
qualifications to give an expert opinion on causation.  It is thus appropriate
to remand this case to the trial court so it can exercise its discretion whether
to grant a thirty-day extension so that Salais can attempt to cure this
deficiency.  See Austin Heart, 228 S.W.3d at 284-85; see also
In re Buster, 275 S.W.3d 475, 477 (Tex. 2008) (“A report by an unqualified
expert will sometimes (though not always) reflect a good-faith effort
sufficient to justify a 30-day extension.”).

Accordingly, we sustain the second issue
and remand this cause to the trial court with the instruction to consider and
rule on Salais’s motion for a thirty-day extension to attempt to cure the
deficiency in Dr. Winston’s report.

 

 

REX
D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

(Chief Justice Gray dissenting)

Reversed
and remanded

Opinion
delivered and filed August 4, 2010

[CV06]

 









[1] To the extent that Salais has asserted
a health-care liability claim based on alleged misuse of the AED (it is in the
Wohlers report, but it is not pleaded by Salais), there is “no report” at all as
to causation, and the trial court properly dismissed that part of the
health-care liability claim.  See Benson v. Vernon, 303 S.W.3d 755, 760-61
(Tex. App.—Waco 2009, no pet.).