**Affirmed and Opinion filed October 6, 2011.**



In The

# Fourteenth Court of Appeals

_____

### NO. 14-10-01200-CV
_____

### CHAU LE NEASON, M.D., Appellant

### V.

### JANELLE GORE BUCKNER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JAMES WAYLON BUCKNER AND CHELSYA JANELLE BUCKNER, Appellees

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2010-01169**

# OPINION

In this health care liability case, the plaintiffs allege that Dr. Chau Le Neason ("Neason") committed sixteen specific acts of medical negligence, one or more of which caused the death of James Waylon Buckner. Neason appeals the trial court's denial of her motion to dismiss three of those sixteen allegations from the case. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before agreeing to perform back surgery on James Waylon Buckner, James's orthopedic surgeon asked Neason, an internal medicine physician, to provide a "preoperative evaluation." During this evaluation, Neason told James the medication he took to control his peripheral vascular disease could cause excessive bleeding during the planned surgery, and he should discontinue their use.

After Francis performed the surgery on February 9, 2009, James was given "thigh-high TED stockings and a foot pump" to prevent blood clots in his legs. Neason examined James on February 11, 2009, and told him he should resume his regular medication after "the orthopedic surgeon" approved its use. James was discharged from the hospital the next day and instructed to wear the stockings for three weeks, but was given no written instructions as to when he should resume his former medication schedule. Three days after he was discharged from the hospital, James died from bilateral pulmonary emboli.

On January 7, 2010, James's wife, Janelle Gore Buckner, sued Francis, Neason, and Spine Associates of Houston, L.L.C. on behalf of herself, James's estate, and James's minor child, Chelsya Janelle Buckner. Although the plaintiffs allege that Neason committed sixteen specific "acts, wrongs and/or omissions" that caused James's death, only three of the allegations are at issue in this appeal. Specifically, they state that Neason's negligence consisted of

> 8) Failing to immediately consult a specialist when the Defendants knew or
> should have known that their skills, knowledge or facilities were inadequate
> to properly treat James Waylon Buckner under the circumstances as they
> then existed;
>
> . . .
>
> 10) Failing to develop, employ, monitor, and follow appropriate policies
> and procedures with regard to the assessment, treatment, management, and
> oversight of patients such as Plaintiff [sic], and/or failing to train, employ,

and provide appropriate personnel to carry out such policies and procedures;

. . .

12) Fail[ing] to obtain [the] consent of James Buckner to the surgery after first informing him of the risk of death from pulmonary embolism and deep vein thrombosis as a result of the February 2009 surgery, especially coupled with the failure to provide antithrombotic treatment . . . .

On the same day that the Buckners filed their original petition, they served Neason with an expert report dated October 9, 2009 (the "original report") in which Dr. Steven R. Graboff opined that Neason could have prevented James's death with proper care. The Buckners served a second copy of the same report on February 11, 2010.

On August 5, 2010, Neason filed a motion to dismiss in which she characterized each of the allegations in Janelle's original petition as separate health care liability claim. In the motion, Neason admitted that the Buckners filed the original report and the citation in this case at the same time, but argued that three of their "claims" should be dismissed because "they are not mentioned" in the expert report. The trial court sustained Neason's objections and granted the Buckners a 30-day extension to cure any deficiencies. They timely filed a supplemental expert report, and on September 14, 2010, Neason filed a second motion to dismiss the three allegations described above. The trial court denied the motion, and this interlocutory appeal ensued.

## II. ISSUES PRESENTED

Reasoning that expert reports are required in support of each allegedly negligent act, and that allegations that are not so supported must be dismissed, Neason argues that the trial court erred in denying her second motion to dismiss. We review the trial court's ruling on a motion to dismiss for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W. 3d 873, 877–78 (Tex. 2001).

3

## III. ANALYSIS

As a threshold matter, the Buckners contend that we lack jurisdiction over this appeal. Whether a court has subject matter jurisdiction is a question of law, which we review *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). As relevant here, Texas Civil Practices and Remedies Code section 51.014(a)(9) provides that a person may appeal an interlocutory order that "denies all or part of the relief sought by a motion under Section 74.351(b) . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West 2008). Section 74.351(b) provides that the trial court must grant an affected health care provider's motion for dismissal of the claim with prejudice and for an award of costs and fees if an expert report was not timely served. *Id.* § 74.351(b). Neason is an affected health care provider, and the trial court denied the motion to dismiss in which Neason asserted that no expert report in support of the challenged allegations was timely served. We therefore have jurisdiction over this appeal.

### A. Waiver

Neason admitted in her first motion to dismiss that the Buckners' expert report was served at the same time suit was filed in January 2010. Nevertheless, Neason raised no objection to the report until she moved to dismiss certain of the allegations in August 2010. But, a defendant health care provider must raise any objections to the sufficiency of a timely report not later than 21 days after service. *Id.* § 74.351(a). A defendant who fails to do so waives all objections to the report. *Id.*; *see, e.g.*, *Ogletree v. Matthews*, 262 S.W.3d 316, 322 (Tex. 2007) (hospital waived all objections to the adequacy of an expert report by failing to object within 21 days of service).

The Buckners assert, both in the trial court and on appeal, that Neason waived her objections because she did not move for dismissal or otherwise object to the adequacy of the original report within 21 days after service. *See* TEX. CIV. PRAC. & REM. CODE ANN.

4

§ 74.351(a). The Buckners further reason that because Neason waived all objections to the original report, her objections to the supplemental report also were waived.

The Buckners served the original report in both January 2010 and February 2010; Neason did not move to dismiss until approximately 210 days after the report was served the first time and 175 days after the report was served the second time. Neason then argued that, as to three of the sixteen specific acts of negligence alleged in the petition, the expert report lacked the statutory requirements of an expert report and therefore was so deficient as to be no report at all. Neason maintains that objections based on a failure to serve an expert report are not subject to the 21-day day deadline and she did not waive any rights to object or appeal. *See id*.; TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). She then argues that the supplemental expert report was similarly defective, and thus, the trial court erred in denying her second motion to dismiss.

Section 74.351(a) provides that each defendant physician "whose conduct is implicated in a report" must file and serve objections timely. A report supporting allegations that a physician's thirteen negligent acts or omissions caused a patient's death implicates that physician's conduct. The original expert report therefore is not the equivalent of the complete absence of an expert report and, consequently, Neason was required to assert any objections to it within 21 days. *See Ogletree*, 262 S.W.3d at 321–22 (rejecting argument that a report by a nurse was "no report" at all and holding that the hospital waived its objections by failing to raise them within 21 days); *Troeger v. Myklebust*, 274 S.W. 3d 104, 108 (Tex. App.—Houston [14th Dist.] 2008, pet denied) (rejecting argument that an expert report implicating doctor's conduct without identifying him by name was, in effect, no report); *Beckwith v White*, 285 S. W. 3d 56, 62–63 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (rejecting an argument that a report by an unqualified doctor is "no report"); *Maris v. Hendricks*, 262 S.W.3d 379, 384–85 (Tex. App.—Fort Worth 2008, pet denied) (rejecting the argument that a report in which the physician assistant was not identified by name constituted "no report," and concluding

5

that a motion to dismiss was untimely because it was filed more than 21 days after the report was served).

Neason cites *Benson v. Vernon*, 303 S.W.3d 755, 761 (Tex. App.—Waco 2009, no pet.), for the proposition that when a claim is not addressed in an expert report, it is no report at all and the 21-day deadline for objections does not apply. In *Benson*, the plaintiff alleged that the health care provider's various acts of negligence caused two injuries: a pneumothorax and asymmetry of the right breast. *Id.* at 759. A divided court concluded that the plaintiff's expert report did not inform the defendant "of the specific conduct sued on with respect to asymmetry of the right breast," *id.*, and "render[ed] judgment of dismissal on that claim." *Id.* at 762. *But see Fagadau v. Wenkstern*, 311 S.W. 3d 132, 136–37 (Tex. App.—Dallas 2010, no pet.) (declining to follow *Benson* and instead concluding that such a report should be considered a deficient report rather than no report at all).

Neason's reliance on *Benson* is misplaced. Unlike the plaintiff in *Benson*, James Buckner sustained a single injury. Moreover, the Texas Supreme Court subsequently clarified that "a document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." *Scoresby v. Santillan*, 54 Tex. Sup. Ct. J. 1413, 2011 WL 2586860, at *1 (July 1, 2011). If this requirement is satisfied, then any inadequacies in the report "are deficiencies the plaintiff should be given an opportunity to cure." *Id.* [1]

---

[1] The additional cases on which Neason relies are similarly unpersuasive and, in most instances, factually distinguishable. Many concerned the distinction between direct and vicarious liability, which is not at issue here. *See, e.g.*, *Petty v. Chumer,* 310 S.W.3d 131,138 (Tex. App.—Dallas 2010, no pet.); *Beaumont Bone & Joint Institute, P.A. v. Slaughter*, No. 09-09-00316-CV, 2010 WL 730152, at *2–*4 (Tex. App.—Beaumont Mar. 4, 2010, pet. denied) (mem. op.); *Azle Manor, Inc. v. Vaden*, No. 2-08-115-CV, g, at *5 (Tex. App.—Fort Worth Nov. 6, 2008, no pet.) (mem. op.); *Methodist Charlton Med. Ctr. v. Steele*, 274 S.W.3d 47, 49 (Tex. App.—Dallas 2008, pet. denied). In another, as in *Benson*, there were multiple injuries. *See, e.g.*, *See Farishta v. Tenet Healthsystem Hosps. Dallas, Inc.*, 224 S.W.3d 448, 455 (Tex. App.—Fort Worth 2007, no pet.). In one case Neason cites, the court dismissed the entire suit against a defendant physician where the expert report did not address any act of negligence actually alleged against that defendant. *See Clark v. HCA, Inc.*, 210 S.W.3d 1, 11 (Tex. App.—El Paso 2005, no

Applying the reasoning of *Scoresby* to the facts of this case, the original report served to Neason in January 2010 and again on February 2010 must be considered an expert report if it contains an expert's opinion indicating that there is merit to the Buckners' contention that Neason's negligent provision of health care caused James's death. *See id.*; *cf. Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 123 n.3 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (where the plaintiff alleged that the defendant's negligence before and during surgery caused her injury, the case could not be dismissed if the expert report adequately addressed defendant's negligence under either theory). This is so even if the report does not address each of Neason's alleged acts or omissions that are claimed to have caused James's death. *See Arboretum Nursing & Rehab Ctr. of Winnie, Inc. v. Isaacks*, No. 14-07-00895-CV, 2008 WL 2130446, at *6 (Tex. App.—Houston [14th Dist.] May 22, 2008, no pet.) (mem. op.) (holding expert report was sufficient even though it met the statutory requirements for only a subset of plaintiff's allegations)

Neason argues that the report is inadequate as to three of her sixteen alleged acts or omissions, but she has not denied that, at least in some respects, the report implicates her conduct. Because it is undisputed that the report is authored by a person with expertise and indicates that there is merit to the contention that Neason's negligent conduct caused James's death, we conclude that it must be considered an expert report. *See Scoresby*, 2011 WL 2586860, at *1; *Fagadau*, 311 S.W.3d at, 136–37; *Arboretum*, 2008 WL 2130446, at *6. Thus, after the Buckners served the original expert report, Neason had 21 days to raise any objections to its sufficiency. Because Neason did not meet this deadline, she waived all objections to it.

---

pet.). Here, the suit was not dismissed, and Neason has not denied that the expert report addresses some of her alleged acts of negligence. In *Salais v. Texas Department of Aging & Disability Services*, 323 S.W.3d 527 (Tex. App.—Waco 2010, pet. denied), the Tenth Court of Appeals affirmed the dismissal of a "claim" that the plaintiff never alleged; that is not true of this case. And, of course, all of the cases were decided before *Scoresby*.

Neason argues that because the trial court sustained the objections raised in her first motion to dismiss and ordered the Buckners to cure the report's deficiencies within 30 days, the trial court believed that the report was deficient as to those claims. This, however, does not affect our analysis. When a health care provider fails to timely object to an expert report, the trial court's order to the plaintiff to cure the report's deficiencies is "superfluous and procedurally inconsequential." *Maris*, 262 S.W.3d at 386; *see also In re Rivera*, 281 S.W.3d 510, 513–14 (Tex. App.—El Paso 2008, orig. proceeding) (holding that a trial court abuses its discretion by sustaining an untimely objection to an expert report and granting a 30-day extension to cure the report's deficiencies). We accordingly overrule the issues Neason presents in this appeal.

## CONCLUSION

The deadlines in section 74.351(a) serve an important purpose in that they allow trial courts to quickly dispose of unmeritorious causes of action. It would be contrary to the statute's purpose and would pointlessly multiply interlocutory appeals if we were to address Neason's argument that an expert report served months earlier does not address each of her alleged acts or omissions that are claimed to have caused the patient's injury. To do so would be to allow a health care provider to file a separate motion to dismiss as to each alleged breach of the standard of care that was arguably unaddressed in the expert report, and to do so at almost any time in the litigation. Using this case as an example, if we were to accept Neason's reasoning and address the merits of her belated objections, then—regardless of how we ruled—Neason could again challenge the expert report as to one of the remaining allegations against her and again appeal an adverse ruling. She then could repeat that process for *each* of the thirteen remaining allegations against her. This would be contrary both to binding precedent and to the legislature's purpose in enacting the statutes at issue.

We accordingly hold that because Neason failed to timely object to the original expert report, all of her objections to the expert report were waived. Thus, we affirm the denial of her second motion to dismiss.


/s/    Tracy Christopher
Justice


Panel consists of Justices Anderson, Brown, and Christopher.