**Opinion issued November 13, 2018.**



In The

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-18-00545-CV**

———————————

**FONDREN ORTHOPEDIC GROUP, LLP AND HUSSEIN ADEL ELKOUSY, M.D., Appellants**

**V.**

**JUSTIN M. SHERMAN, Appellee**

———

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Case No. 2017-37482**

———

**MEMORANDUM OPINION**

This is an interlocutory appeal from the trial court's denial of appellants

Fondren Orthopedic Group, LLP's and Hussein Adel Elkousy, M.D.'s motion to

dismiss the healthcare liability claims filed against them by appellee Justin M.

Sherman. In two issues, Fondren and Dr. Elkousy argue that the trial court abused its discretion by denying their motion to dismiss because: (1) Sherman's expert is not qualified to opine on the applicable standard of care and alleged breaches of the standard of care; and (2) Sherman's expert report failed to sufficiently set forth the applicable standard of care, breach of the standard of care, and the causal relationship between the breach and Sherman's alleged injury. Because Sherman's expert report does not meet the statutory requirements, we reverse the trial court's order denying Fondren's and Dr. Elkousy's motion to dismiss.

## Background

Sherman's medical records are not before us, therefore, we accept the factual statements in Sherman's expert reports, prepared by Dr. Jason Nirgiotis, for the limited purpose of this appeal.[1]

Sherman injured his left shoulder in a motorcycle accident on June 5, 2015. His treating physician, Dr. Hussein Adel Elkousy (Dr. Elkousy) of the Fondren Orthopedic Group, LLP (Fondren), performed a "left distal clavicle AC joint open reduction/internal fixation with arthrex dog bone construct for implant" on Sherman on June 17, 2015.

---

[1] *See Marino v. Wilkins*, 393 S.W.3d 318, 320 n.1 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Shenoy v. Jean*, No. 01–10–01116–CV, 2011 WL 6938538, at *1 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, pet. denied) (mem. op.)).

Nine days after his surgery, Sherman developed severe pain and swelling in his left shoulder. He went to the emergency room where he was diagnosed with an infection in his operative site.[2] The following day, June 27, 2015, Dr. Elkousy performed a second operation on Sherman, namely, "a left shoulder open and arthroscopic irrigation and debridement of abscess and hematoma with removal of hardware." Dr. Elkousy also performed two more irrigation and debridement operations on June 30 and July 1.

Sherman saw Dr. Elkousy for a post-operative visit on July 16. One of Dr. Elkousy's notes from that visit states, "I will take ownership of the infection as it occurred after my surgery. The organism is a common one found in the community so it is not clear how it was acquired, but we will make the assumption that it occurred from surgery." Dr. Nirgiotis states in his report that "during that office visit, which was recorded by Justin Sherman, Dr. Elkousy state[d] that the blame for the infection is no one else's but his."

Sherman sued Dr. Elkousy and Fondren[3] for medical malpractice on June 5, 2017. On October 20, 2017, Sherman served Dr. Elkousy and Fondren with Dr. Nirgiotis's expert report. Dr. Elkousy and Fondren objected to the sufficiency of the

---

[2]    Dr. Nirgiotis's report does not identify the type of infection Sherman developed.

[3]    Sherman non-suited his claims against a third defendant, The Texas Orthopedic Hospital.

3

report and moved to dismiss Sherman's medical malpractice claims pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code. Specifically, Dr. Elkousy and Fondren argued that Sherman's expert report failed to establish on its face that Dr. Nirgiotis is qualified to render opinions in this case, and that the report failed to adequately set forth the standard of care, breaches in the standard of care, and the causal relationship between any alleged breach and any injury suffered by Sherman. After considering the motion and Sherman's response, the trial court granted Sherman a 30-day extension to file an amended report.[4]

Sherman timely served Dr. Elkousy and Fondren with Dr. Nirgiotis's amended and supplemental expert reports. Dr. Elkousy and Fondren objected to the sufficiency of Dr. Nirgiotis's reports on the same grounds they objected to his initial report and moved to dismiss Sherman's medical malpractice claims pursuant to section 74.351(b).

The trial court overruled Dr. Elkousy's and Fondren's objections and denied their motion to dismiss. This interlocutory appeal followed.

---

[4]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (West 2017) (stating trial court "may grant one 30-day extension to the claimant in order to cure the deficiency" in initial expert report).

# Dr. Nirgiotis's Report[5]

In his report, Dr. Nirgiotis discusses the techniques and treatments necessary to prevent the introduction of bacteria into a surgical wound.

> The techniques and care required to avoid introducing bacteria to the surgical wound are numerous. First, a dose of appropriate antibiotics must be administered prior to the skin incision. The antibiotic of choice must cover the bacteria most likely to cause infection, especially staph aureus. Then, an appropriate prep of the skin must be done. Sterile technique must be maintained throughout the procedure. The length of the procedure should be minimized, as longer operative times increase infections. Blood loss must be minimized as this also increases infection risk. Gentle handling of tissue should be undertaken to avoid tissue damage, as damaged tissue will be more susceptible to infection. Great care must be taken to make sure that the instruments used are sterile and that the implant has maintained sterility prior to its use. An appropriate dressing should be used to cover the wound at the end of the operation. Appropriate antibiotics should be continued post-operatively when an implant is used.

> All of these techniques and treatments apply to everyone involved in the care of Mr. Sherman, including applying to Dr. Elkousy, The Fondren Orthopedic Group, and The Texas Orthopedic Hospital.

> Failure to take one or more of these precautions was the proximate cause of Mr. Sherman's infection.

With respect to Dr. Elkousy, Dr. Nirgiotis opined in his report that:

> The standard of care for Dr. Elkousy in treating Mr. Sherman required that he not allow bacteria to be introduced into the wound during his operation on 6/17/15 to repair Mr. Sherman's shoulder injury. Care must be taken during major orthopedic operations, and especially during operations that involve implants, to ensure that no bacteria are introduced into the wound as this will lead to an infection. Prudent and ordinary care would require Dr. Elkousy to administer appropriate

---

[5]   Dr. Nirgiotis's supplemental report incorporates by reference the opinions he expressed in his initial and amended reports.

antibiotics, maintain sterile technique, and generally, not introduce dangerous bacteria into Mr. Sherman's wound.

. . . .

There was a breach in the standard of care by Dr. Elkousy in treating Mr. Sherman when he allowed bacteria to be introduced into the wound during his operation on 6/17/15 to repair Mr. Sherman's shoulder injury. Great care must be taken to avoid bacterial infections after major orthopedic operations because it is such a devastating occurrence. This is especially true when an implant is being used. Therefore, it was a breach in the standard of care when adequate measures were not taken by Dr. Elkousy to avoid bacteria from being introduced during Mr. Sherman's operation.

. . . .

To a reasonable degree of medical probability, had Dr. Elkousy not allowed bacteria to be introduced during his operation on Mr. Sherman on 6/17/15 to repair Mr. Sherman's shoulder injury, a devastating infection would not have occurred. Therefore he would not have required three subsequent operations to debride the infected tissue. And therefore, he would not have had to have his implant removed, which has led to constant pain and complete impairment of his shoulder and arm.

With respect to Fondren, Dr. Nirgiotis opined in his report that:

The standard of care for the Fondren Orthopedic Group in assuming care for Mr. Sherman required that they not allow bacteria to be introduced into the wound during the operation on 6/17/15 to repair Mr. Sherman's shoulder injury. Care must be taken during major orthopedic operations, and especially during operations that involve implants, to ensure that no bacteria are introduced into the wound as this will lead to an infection. Prudent and ordinary care would require Fondren Orthopedic Group to ensure the administration of appropriate antibiotics, the maintenance of sterile technique, and generally, that no dangerous bacteria be introduced into Mr. Sherman's wound.

. . . .

6

There was a breach in the standard of care by the Fondren Orthopedic Group in treating Mr. Sherman when they allowed bacteria to be introduced into the wound during the operation on 6/17/15 to repair Mr. Sherman's shoulder injury. Great care must be taken to avoid bacterial infections after major orthopedic operations because it is such a devastating occurrence. This is especially true when an implant is being used. Therefore, it was a breach in the standard of care when adequate measures were not taken by the Fondren Orthopedic Group to avoid bacteria from being introduced during Mr. Sherman's operation.

. . . .

To a reasonable degree of medical probability, had the Fondren Orthopedic Group not allowed bacteria to be introduced during the operation on Mr. Sherman on 6/17/15 to repair Mr. Sherman's shoulder injury, a devastating infection would not have occurred. Therefore he would not have required three subsequent operations to debride the infected tissue. And therefore, he would not have had to have his implant removed, which has led to constant pain and complete impairment of his shoulder and arm.

**Chapter 74 Expert Reports**

Section 74.351 of the Civil Practice and Remedies Code serves as a gatekeeper. No medical negligence cause of action may proceed until the plaintiff has made a good faith effort to demonstrate that a qualified medical expert believes that a defendant's conduct breached the applicable standard of care and caused the claimed injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*), (r)(6) (West 2017). To constitute a good faith effort, the report must provide enough information to fulfill two purposes: (1) inform the defendant of the specific conduct that the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claim has merit. *See Am. Transitional Care Ctrs. of Tex., Inc. v.*

7

*Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001). A report that merely states the expert's conclusions about standard of care, breach, and causation does not fulfill these two purposes. *See id.* at 879. The expert must explain the basis for his statements and link his conclusions to the facts. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). In determining whether the report meets those requirements, the court should look no further than the report itself, because all the information relevant to the inquiry must be contained within the report's four corners. *See id.* The expert report is not required to marshal all the plaintiff's proof necessary to establish causation at trial. *See id.*

**Sufficiency of Dr. Nirgiotis's Report**

Dr. Elkousy and Fondren argue that the trial court abused its discretion by denying their motion to dismiss Sherman's health care liability claims against them because: (1) the report does not demonstrate the Dr. Nirgiotis is qualified to opine on the applicable standard of care and breaches of the standard of care; and (2) Sherman's report was conclusory and failed to sufficiently set forth the applicable standard of care, breach of the standard of care, and the causal relationship between the breach and Sherman's alleged injury in his expert report.

**A.  Standard of Review**

We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *See Palacios*, 46 S.W.3d at 875. A trial court abuses its discretion when

it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). As a reviewing court on matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court merely because we would have ruled differently. *See Wright*, 79 S.W.3d at 52. A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

## B. Analysis

In his report Dr. Nirgiotis stated that the applicable standard of care "required that [Dr. Elkousy] not allow bacteria to be introduced into the wound" during Sherman's operation, and that "[p]rudent and ordinary care would require Dr. Elkousy to administer appropriate antibiotics, maintain sterile technique, and generally, not introduce dangerous bacteria into Mr. Sherman's wound." According to Dr. Nirgiotis, Dr. Elkousy breached that standard of care "when he allowed bacteria to be introduced into the wound" during Sherman's surgery and by failing to take "adequate measures . . . to avoid bacteria from being introduced during Mr. Sherman's operation." Dr. Nirgiotis further opined that "[t]o a reasonable degree of medical probability, had Dr. Elkousy not allowed bacteria to be introduced during his operation on Mr. Sherman on 6/17/15 to repair Mr. Sherman's shoulder injury, a devastating infection would not have occurred."

Dr. Nirgiotis offered a practically identical opinion with regard to Fondren. Specifically, Dr. Nirgiotis opined in his report that the applicable standard of care "required that [Fondren] not allow bacteria to be introduced into the wound" during Sherman's operation, and that "[p]rudent and ordinary care would require Fondren Orthopedic Group to ensure the administration of appropriate antibiotics, the maintenance of sterile technique, and generally, that no dangerous bacteria be introduced into Mr. Sherman's wound." According to Dr. Nirgiotis, Fondren breached the standard of care "when [it] allowed bacteria to be introduced into the wound" during Sherman's surgery and failed to take "adequate measures . . . to avoid bacteria from being introduced during Mr. Sherman's operation." He further opines that, "[t]o a reasonable degree of medical probability, had the Fondren Orthopedic Group not allowed bacteria to be introduced during the operation on Mr. Sherman on 6/17/15 to repair Mr. Sherman's shoulder injury, a devastating infection would not have occurred."

Dr. Nirgiotis had previously identified a number of precautionary techniques and procedures that could prevent the introduction of bacteria into a surgical wound, and stated that the "[f]ailure to take one or more of these precautions was the proximate cause of Mr. Sherman's infection." However, Dr. Nirgiotis does not specify how Dr. Elkousy or Fondren deviated from these protocols, and we are not allowed to draw inferences from the report or speculate as to how Dr. Elkousy and

10

Fondren might have done so. *See Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.). Thus, Dr. Nirgiotis's report is insufficient as to breach because it does not specifically inform Dr. Elkousy or Fondren of the negligent acts, or failures to act, that caused the injury to Sherman. *See Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st. Dist.] 2006, no pet.) ("Whether a defendant breached the standard of care due a patient cannot be determined without 'specific information about what the defendant should have done differently.'") (quoting *Palacios*, 46 S.W.3d at 880).

Sherman relies heavily on a notation in the medical records and statements Dr. Elkousy made to Sherman during a post-operative visit to argue that the report constitutes a good faith effort to comply with Chapter 74's requirements. Sherman's reliance on these statements is misplaced. Dr. Elkousy's statements that "the blame for the infection is no one else's but his," he will "take ownership of the infection as it occurred after [his] surgery," and that he "will make the assumption that [the infection] occurred from surgery" are not admissions that he or Fondren failed to exercise ordinary care with regard to the care they provided to Sherman. *Cf. Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 196 (Tex. 2012) (noting "the long-recognized principle that a physician who exercises ordinary care . . . is not liable to a patient for a bad outcome"); *Palacios*, 46 S.W.3d at 880 (stating breach of standard of care cannot be inferred from existence of injury alone because doctrine of res ipsa

11

loquitor does not generally apply in medical malpractice cases). Furthermore, Dr. Elkousy's remarks do not state how the bacteria was introduced into Sherman's wound during surgery or identify a specific act or omission by Dr. Elkousy or Fondren that allowed the introduction of the bacteria that resulted in Sherman developing a post-operative infection.

Accordingly, we conclude that Dr. Nirgiotis's report does not represent a good faith effort to comply with the statutory requirements because it does not specify how Dr. Elkousy or Fondren breached the standard of care. We further conclude that the report is insufficient as to causation because Dr. Nirgiotis does not adequately link Sherman's injury to a breach in the standard of care. Because Dr. Nirgiotis's report does not represent a good faith effort to comply with the statutory requirements, the trial court abused its discretion by denying Dr. Elkousy's and Fondren's motion to dismiss.[6]

We sustain Dr. Elkousy's and Fondren's second issue.

---

[6] Having determined that the report was inadequate as to breach and causation, we do not need to address whether the report demonstrates that Dr. Nirgiotis is qualified to opine as to the standard of care and breach.

12

**Conclusion**

We reverse the trial court's order denying Dr. Elkousy's and Fondren's motion to dismiss, and we remand the cause to the trial court for further proceedings consistent with this opinion.

Russell Lloyd
Justice

Panel consists of Justices Keyes, Bland, and Lloyd.

13